Berkowitz Lichtstein

BERKOWITZ, LICHTSTEIN, KURITSKY, GIASULLO & GROSS, LLC • COUNSELORS AT LAW

75 Livingston Avenue · Suite 102 · Roseland, New Jersey · 07068
*Main* 973.325.7800 · *Fax* 973.325.7930 · www.blkgg.com

104 West 40th Street · Suite 500 · New York, New York · 10018
*Main* 646.475.8364

Richard S. Finkelstein ■▲
Robert J. Giasullo
Jonathan M. Gross ■▲
Stuart M. Kuritsky
Stewart M. Leviss ●
John C. Messina
Lawrence T. Neher
Lance T. Eisenberg ■☼
Roy J. Thibodaux III ▲●
Eric Melzer *▲
Lisa M. Stern ■▲
Matt Iftode ▲
Evan Silagi ▲
Eric Carosia ▲
Kevin R. Centurrino ♦
Brendan Greve
Maria A. Muchnik

■ *LLM in Taxation*
* *LLM in Corporate & Trade Regulation*
▲ *Admitted in NY & NJ*
♦ *Admitted in PA, NY & NJ*
☼ *Admitted in FL, NY & NJ*
● *Certified by the Supreme Court of New Jersey as a Certified Trial Attorney*

Bernard S. Berkowitz (1930-2024)
Stephen P. Lichtstein (1946-2019)

Stewart M. Leviss
Direct Line: 973-243-6024
E-mail: sleviss@blkgg.com

August 26, 2026

**VIA CM/ECF**
Patricia S. Dodszuweit, Clerk of Court
Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re: Atlas Data Privacy Corp. et al. v. We Inform, LLC et al.,**
**Third Circuit Court of Appeals Docket No. 25-1555 (Consolidated)**

Dear Honorable Judges:

Kindly accept this proposed letter brief on behalf of *amicus curiae* Abine, Inc. to address a narrow factual premise in Defendants-Appellants' facial challenge to Daniel's Law, N.J.S.A. § 56:8-166.1 et seq., and as referenced in page 31 and footnote 8 of the New Jersey Supreme Court's opinion on the question certified by this Court. That premise, advanced by Defendants-Appellants throughout their briefs in this Court and the New Jersey Supreme Court concerns whether the alleged tens of thousands of nondisclosure notices received by data brokers at issue here were an unusual or atypical volume for data-broker legal compliance and privacy processing. They were not.

## I. Interest of *Amicus Curiae*

Abine Inc., doing business as DeleteMe ("DeleteMe") provides technology and services that help individuals discover and remove personal information from data brokers

and people-search sites. DeleteMe has direct operational experience generating, routing, monitoring, and renewing privacy requests at scale for over 15 years.

DeleteMe has provided personal-information removal services since 2011, which are described at its website joindeleteme.com. It submits opt-out, deletion, and suppression requests to data brokers and people-search sites and monitors for reappearance. DeleteMe protects federal and state judiciaries inclusive of sitting and retired judges, political bodies, armed forces, law enforcement agencies, healthcare providers, critical infrastructure, private employers, and individual users.

While DeleteMe is a market competitor of Plaintiff-Appellant Atlas Data Privacy Corporation ("Atlas"), it has a strong interest in furthering the rights and ability of individual consumers to submit privacy requests to control, restrict or remove their personal information from data broker websites.

Since at least 2020 when the California Consumer Privacy Act (CCPA) went into effect, data brokers have processed millions of consumer privacy requests as a routine business function. DeleteMe submits this brief because it knows, from doing this work every day for years, how many requests data brokers of Defendants-Appellants kind and scale receive, how those requests arrive, and how quickly data brokers act on them.

## II. Argument

A facial challenge requires showing that a law's unconstitutional applications are substantial relative to its plainly legitimate sweep. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–26 (2024); *United States v. Hansen*, 599 U.S. 762, 770 (2023). Defendants-Appellants claim that Atlas "sought to harness the newly amended Law's unique combination of speech-restrictive tools to overwhelm each Defendant with thousands of nondisclosure notices," Defendants-Appellants' Joint Third Circuit Br. at 5, and the New Jersey Supreme Court hypothesized a defendant may fail to comply because it "received a high volume of requests at one time," *Atlas Data Privacy Corp. v. We Inform, LLC*, No. A-8-25, slip op. at 30–31 & n.8 (N.J. Aug. 12, 2026). Each statement rests on the same premise: that a volume of this size is extraordinary, such that a data broker exercising reasonable care might be unable to answer it within ten business days, and, as such, given the breadth of its potential applications, Daniel's Law should be held facially unconstitutional.

To the extent the Court considers these data broker industry claims, it is important to know that their premise is empirically unfounded. The data brokers before this Court

already receive, and report promptly resolving, request volumes far larger than the tens of thousands of notices at issue here. If a particular data broker's circumstances truly made timely compliance under Daniel's Law infeasible, that is a defendant-specific claim resting on defendant-specific facts — the paradigm of an as-applied constitutional challenge. It is no basis for facially invalidating a statute across all of its potential applications, where the volume at issue is a fraction of what these defendants already routinely process.

First, removal services, including DeleteMe, deliver privacy requests to individual data brokers in volumes that dwarf the notices at issue—over a hundred thousand per year per broker.

- DeleteMe submits more than 125 million removal requests annually to approximately 986 data brokers—an average of roughly 126,000 requests per data broker per year, nearly seven times the notices at issue in these cases.
- Array, US, Inc. ("Array") between April 2022 and January 2026 partnered with the financial services company Discover to offer its credit-card and banking customers a free "Online Privacy Protection" benefit. Through this benefit, Array scanned ten people-search websites about every ninety days and submitted opt-out requests on behalf of roughly three million people in the program's first year, and again every quarter for nearly four years.[1]
- Incogni, another removal service, delivered more than 245 million removal requests to more than 420 data brokers between January 2022 and July 2025—an average of over 160,000 requests per broker per year.[2]

Second, California now transmits hundreds of thousands of deletion requests to every data broker registered in the State, every forty five days. Since January 1, 2026, more

---

[1] Discover, Press Release (Apr. 20, 2022), https://www.businesswire.com/news/home/20220420005202/en/; Discover Fin. Servs., Annual Report (Form ARS) at 1 (Mar. 29, 2023), https://www.sec.gov/Archives/edgar/data/1393612/000139361223000025/dfsannualreport2022.pdf (in 2022, Discover's "new free Online Privacy Protection benefit . . . helped over 3 million customers remove more than 30 million personal records from select people-search websites"); *see also* Discover Fin. Servs., Proxy Statement (Schedule 14A) (Mar. 17, 2023) (benefit "on track for 2.9M registrations"), https://www.sec.gov/Archives/edgar/data/1393612/000139361223000018/dfs-20230317.htm.

[2] Incogni, *Deloitte Independent Limited Assurance Report* (Aug. 2025), https://blog.incogni.com/deloitte-independent-limited-assurance-report/.

than 475,000 Californians enrolled in the State's Delete Request and Opt-Out Platform ("DROP") that submits requests to "every data broker that maintains any personal information" about that consumer.[3]

Beginning August 1, 2026, each of the more than 580 registered brokers must "access the accessible deletion mechanism … at least once every 45 days" and, "[w]ithin 45 days after receiving a request," process every matching deletion request — and must repeat the deletion every forty-five days thereafter.[4] In practical terms, every registered data broker in the country's largest state was required, at its first access, to retrieve and process the accumulated deletion requests of nearly half a million consumers—a legislative judgment that processing deletion requests in bulk, on short cycles, is not merely feasible but compulsory.

Third, Defendants-Appellants' own disclosures report per-company volumes of ten to nearly ninety times the notices at issue here, resolved at median response times of about one day.[5]

- Lead Defendant-Appellant We Inform, LLC reported receiving 323,716 requests to opt out of the sale or sharing of personal information and 4,814 requests to delete personal information in calendar year 2025 from California residents alone with a mean and median response time of one day.[6]
- Defendant-Appellant Compact Information Systems, LLC reported still larger volumes: 1,684,502 requests to opt out in calendar year 2025 — an average of more

---

[3] California Privacy Protection Agency, Delete Request and Opt Out Platform (DROP), https://cppa.ca.gov/data_brokers/ (last visited Aug. 25, 2026); Cal. Civ. Code § 1798.99.86(a)(2); Off. of the Governor, Press Release (Aug. 13, 2026), https://www.gov.ca.gov/2026/08/13/icymi-california-takes-historic-action-against-data-brokers/.

[4] Cal. Civ. Code § 1798.99.86(c)(1), (d)(1); *see* Cal. Code Regs. tit. 11, § 7612(a) (access "at least once every 45 calendar days").

[5] California requires every registered data broker to report annually how many privacy requests it received from California residents and how quickly it resolved them. Cal. Civ. Code § 1798.99.82; Cal. Code Regs. tit. 11, § 7102.

[6] We Inform, LLC Privacy Policy § 8 (Public Disclosure Metrics), https://www.weinform.org/privacy; We Inform, Opt-Out, https://www.weinform.org/optout (both last visited Aug. 24, 2026).

than 4,500 a day from California residents alone — of which it complied with 1,633,268, at a mean and median response time of less than one hour.[7]

- Defendant-Appellant The Alesco Group, L.L.C. reported to the State, for calendar year 2024, receiving 326,818 requests to delete personal information — complying in whole or in part with more than 97% of them and denying 2.5% — together with 580,584 requests to opt out of the sale or sharing of personal information, at a median response time of one day in both categories.[8]

Those figures *understate* the industry because they encompass only requests from California residents, not residents of the nineteen other States with comprehensive privacy statutes (or other states without privacy statutes), and not the requests that reach these companies under the data-broker registration statutes of Texas, Oregon, and Vermont.[9]

## III. Conclusion

The volume of privacy requests at issue in these cases was ordinary for the industry that received them. Any claim that a particular defendant's individual circumstances made timely compliance impossible belongs in an as-applied posture, on a factual record.

We thank the Court for its consideration of this submission, and for its continued attention to this matter, which is of the utmost importance.

Respectfully submitted,
**BERKOWITZ, LICHTSTEIN, KURITSKY, GIASULLO & GROSS, LLC**
*Attorneys for* Amicus Curiae *DeleteMe*

By: */s/ Stewart M. Leviss*
STEWART M. LEVISS, ESQ.

c: Counsel of Record (via CM/ECF)

---

[7] Deep Sync (Compact Information Systems, LLC), Privacy Policy § Public Stats Disclosure, https://deepsync.com/privacy-policy/ (last visited Aug. 24, 2026).

[8] Cal. Privacy Prot. Agency, Data Broker Registry (registry data file), https://cppa.ca.gov/data_broker_registry/ (last visited Aug. 24, 2026). Seven Defendant-Appellants reported receiving more than 100,000 requests in that single year. *Id.*

[9] *See* Tex. Bus. & Com. Code § 509.004; Or. Rev. Stat. § 646A.593; 9 V.S.A. § 2446.

# CERTIFICATION OF COMPLIANCE

1. Bar Membership. Pursuant to L.A.R. 28.3(d), I certify that I am an attorney with filing privileges in the United States Court of Appeals for the Third Circuit.

2. Type-Volume. Pursuant to the Text Order dated August 12, 2026, I certify that this brief is 5 pages, single spaced. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

3. Paper copies. I certify that the text of the electronic brief filed via ECF is identical to the text of the paper copies mailed to this Court.

4. Virus check. Pursuant to L.A.R. 31.1(c), I certify that I have caused a virus check to be performed using Huntress, and no virus was detected.

5. Service. I certify that on this date, I am causing this brief to be filed electronically via this Court's CM/ECF system. All participants are registered CM/ECF users and service will be accomplished using the CM/ECF system.

Dated: August 26, 2026

*/s/ Stewart M. Leviss*
STEWART M. LEVISS, ESQ.
**BERKOWITZ, LICHTSTEIN,**
**KURITSKY, GIASULLO & GROSS, LLC**
75 Livingston Ave
Roseland, New Jersey 07068
Telephone: 973-325-7800
Direct Dial: 973-243-6024
Fax: 973-325-7930

*Attorneys for* Amicus Curiae *Albine, Inc.*

Berkowitz Lichtstein

BERKOWITZ, LICHTSTEIN, KURITSKY, GIASULLO & GROSS, LLC • COUNSELORS AT LAW

# CERTIFICATE OF SERVICE

I certify that on this date, I am causing this proposed brief on behalf of *Amicus Curiae* Abine, Inc. to be filed electronically via this Court's CM/ECF system. All participants are registered CM/ECF users and service will be accomplished using the CM/ECF system.

Dated: August 26, 2026

/s/ *Stewart M. Leviss*

*Counsel for* Amicus Curiae
*Abine, Inc.*